NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 17, 2017*
Decided March 17, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-1528

| | |
|---|---|
| NATE A. LINDELL, a/k/a<br>NATHANIEL ALLEN LINDELL,<br>　　*Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| | No. 13-C-0759 |
| 　　*v.* | |
| | Charles N. Clevert, Jr., |
| WILLIAM POLLARD, et al.,<br>　　*Defendants-Appellees*. | *Judge*. |

## O R D E R

Nate Lindell, a Wisconsin inmate, contends in this suit under 42 U.S.C. § 1983 that employees at two prisons violated his rights under the First and Fourteenth Amendments. One of the defendants had ordered him to reimburse the state for a hospital visit resulting—the defendant says—from misusing medication. Eight other defendants had thrown away artwork and written materials after telling Lindell he had too many possessions. The finding that he misused medication and the reimbursement

---

* We have agreed to decide this case without oral argument because the dispositive issues have been authoritatively decided. FED. R. APP. P. 34(a)(2)(B).

amount lack an evidentiary basis, Lindell claims, so ordering him to pay violated his right to due process. And disposing of his artwork and written materials, Lindell says, violated the First Amendment. The district court dismissed the due process claim at screening, *see* 28 U.S.C. § 1915A, and eventually granted summary judgment for the remaining defendants on the First Amendment claim, based on qualified immunity. Lindell contests both decisions in this appeal.

Lindell's complaint begins with an incident at Wisconsin's high-security prison in Boscobel. He alleges that one of the defendants, a lieutenant, presided over a disciplinary hearing and, without any evidence, found him guilty of misusing medication in violation of Wisconsin Administrative Code DOC § 303.58. As punishment he was ordered to make restitution by reimbursing the institution roughly $1,870 for medical care, presumably to be paid from Lindell's prison trust account, *see* WIS. ADMIN. CODE DOC § 303.70(7). Lindell alleges that he never got an explanation for the lieutenant's decision or a chance to challenge it. This due process claim was dismissed at screening, so the record is limited to these allegations, which we must accept as true, *see Munson v. Gaetz*, 673 F.3d 630, 631 (7th Cir. 2012).

Two weeks after this disciplinary decision, Lindell was transferred to Waupun Correctional Institution, a prison he had been confined to in the past. Staff at that facility told Lindell he possessed too much personal property, even though, he says, his belongings complied with property limits at Boscobel. It is undisputed that staff members unilaterally decided how much, and which items, of Lindell's property constituted "contraband" because it was over the limit. Staff confiscated a calculator, photos, artwork, and written materials including legal papers and asked Lindell how he wanted to dispose of these excess items. Lindell was not given descriptions of the seized artwork; he wanted to mail those items to his attorney, but he was told that he could send the excess property only to persons on his list of approved visitors.

At first the staff at Waupun would not permit Lindell to sort through the confiscated property, though eventually he was allowed on two occasions to sort through the legal papers and take some back to his cell. But Lindell did not give instructions about where to send most of the remaining property, and it was trashed. Lindell alleges that his property was culled as punishment for past assaults and death threats against prison guards, his white-nationalistic political beliefs, and his extensive litigation against Wisconsin prisons. Throwing away his property, Lindell claims, violated his rights to free speech and access to the courts under the First Amendment.

In dismissing Lindell's claim about the order of restitution, the district court reasoned that he fails to state a due process claim because, the court said, the order resulted from random and unauthorized conduct redressable under Wisconsin tort law. In granting summary judgment on the First Amendment claim, the court declined to credit the defendants' evidence that they had enforced, in neutral fashion, a regulation serving a legitimate penological interest in limiting the amount of property in prison cells. The court was skeptical that the regulation incentivizes inmates to limit excess property since, the court reasoned, Lindell never had a chance to sort through his "contraband" property to decide what to keep. The judge did acknowledge that Waupun administrators have a legitimate penological interest in limiting property to promote institutional safety, but the judge deemed it significant that Lindell had not been allowed to mail his artwork to the attorney. Still, the court concluded, the Waupun defendants have qualified immunity because inmates do not have a clearly established right to sort through contraband or mail it to anyone.

We start with Lindell's claim under the First Amendment, and on this claim we conclude that the district court's concern about the efficacy of the regulation is unwarranted. Whether or not the regulation was successful in encouraging inmates to avoid accumulating excess property is irrelevant. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (explaining that prison regulations impinging on constitutional rights need only be reasonably related to legitimate penological interests). What matters at summary judgment is *evidence*, *see Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016), and in this case Lindell did not introduce any evidence refuting the defendants' explanation that controlling the amount of property kept by prisoners is necessary to preserve the security, management, and resources of the facility, *see Ford v. Schmidt*, 577 F.2d 408, 410 (7th Cir. 1978) ("[P]rison officials may, as a condition of confinement, establish rules and regulations concerning the possession of property by inmates."). Nor did Lindell offer any evidence that the defendants' refusal to let him sort and choose which property to keep was content based, particularly given the fact that some of the culled property is not even remotely related to speech or expression. *See Turner*, 482 U.S. at 90 (emphasizing importance of inquiring "whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression"); *Hammer v. Ashcroft*, 570 F.3d 798, 801–02 (7th Cir. 2009) (en banc) (concluding that blanket ban on press interviews of inmates in Special Confinement Unit is content neutral). Although Lindell argues that the defendants' willingness to let him exchange his legal papers shows that they could have done the same with his other property, the inconsistency does not make the decisions irrational. *See Munson v. Gaetz*, 673 F.3d 630, 636–37 (7th Cir. 2012) (concluding that

prison administrators did not act irrationally by permitting access to some but not all books with same information). Moreover, we see no reason to muddy the waters with an unnecessary discussion of qualified immunity. By now it is well understood that prison administrators may place reasonable limits on what, and how much, property can be kept in a cell, and Lindell was given both time and an avenue to dispose of his excess property. He passed up the opportunity to send the excess items to someone on his visitor list; any of those persons could have served as a conduit to pass items along to a willing recipient, including Lindell's lawyer. This claim wholly lacks merit.

But further proceedings are necessary on Lindell's claim that he was denied due process when he was ordered to pay $1,870 in restitution. We presume that Lindell has a protected property interest in funds in his inmate trust account. *See* WIS. ADMIN CODE DOC § 303.70(7) (limiting restitution to prison's "actual" or "estimated" loss); *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986); *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 291 (3d Cir. 2008). And we must take Lindell at his word that the lieutenant who presided over his disciplinary hearing, defendant Michael Hanfeld, deprived him of $1,870 of his personal funds by finding him guilty of misusing medication without any evidence backing that accusation or amount. The district court reasoned that the lack of evidence could not matter because, in the court's view, the resulting deprivation was random and unauthorized, and thus could not have violated the Due Process Clause if Wisconsin provides a meaningful postdeprivation remedy—a tort suit. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981). But that reasoning is mistaken; the deprivation occurred as a result of an established state procedure and was not random and unauthorized. *See* WIS. ADMIN. CODE DOC § 303.80; *Zinermon v. Burch*, 494 U.S. 113, 137–38 (1990) (explaining that actions are not random and unauthorized where predeprivation safeguards have value in guarding against the kind of deprivation allegedly suffered); *Hudson*, 468 U.S. at 532–33 ("[P]ostdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure."); *Armstrong v. Daily*, 786 F.3d 529, 543 (7th Cir. 2015) ("[A]n official's subversion of established state procedures is not 'random and unauthorized' misconduct."). Thus the availability of state remedies does not foreclose Lindell's claim. It may be that further factual development of this claim will show it to be without merit, but the district court should have allowed it to proceed past screening.

We have considered Lindell's remaining arguments and none has merit. The district court's judgment is VACATED as to Lindell's due process claim against Michael

Hanfeld, and that claim is REMANDED for further proceedings. In all other respects the judgment is AFFIRMED.